IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRYAN K. TAYLOR, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-11-3762 |
| § | |
| MICHAEL J. ASTRUE § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 16), Defendant's Motion for Summary Judgment (Document No. 12) and Memorandum in Support (Document No. 13), and Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 17). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 12) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED, and the decision of the Commissioner is REMANDED for further proceedings.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on April 16, 2012. (Document No. 10).

## I.  Introduction

Plaintiff, Bryan K. Taylor ("Taylor"), brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for disability benefits. According to Taylor, substantial evidence does not support the ALJ's decision, and the ALJ, Rafael Lugo-Vilanova, committed errors of law when he found that Taylor was not disabled at any time from July 13, 2007, through the date of the decision on December 18, 2009.  Taylor argues that the ALJ failed to obtain a knowing and intelligent waiver of counsel, and that because he was not represented the record was not fully developed and he was prejudiced by the absence of counsel.  Closely related to this argument that he was prejudiced as a result of not having counsel, he argues the ALJ erred in failing to find his right hand impairment to be a severe impairment at step 2, and that the ALJ's determination of his residual functional capacity ("RFC") is not supported by substantial evidence. Taylor seeks an order reversing the Commissioner's decision and awarding benefits or in the alternative, remanding his claim for further proceedings.  The Commissioner responds that Taylor knowingly waived his right to representation, that there is substantial evidence in the record to support the ALJ's decision that Taylor was not disabled, that the decision comports with applicable law, and that it should, therefore, be affirmed.

## II.  Administrative Proceedings

On May 15, 2008, Taylor applied for disability insurance benefits claiming that he has been unable to work since July 13, 2007, as a result of depression and post traumatic stress disorder.  (Tr. 10, 137-144, 151-158).  The Social Security Administration denied his application at the initial and

reconsideration stages. (Tr. 84-85). Taylor then requested a hearing before an ALJ. The Social Security Administration granted his request, and the ALJ held a hearing on August 7, 2009. The ALJ at the hearing was Charles Birdsall. (Tr. 57-83). On December 18, 2009, a different ALJ, Rafael Lugo-Vilanova, issued his decision finding Taylor not disabled. (Tr. 7-24).

Taylor sought review by the Appeals Council of the ALJ's adverse decision. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Taylor's contentions, in light of the applicable regulations and evidence, the Appeals Council, on August 23, 2011, concluded that there was no basis upon which to grant Taylor's request for review. (Tr. 1-6). The ALJ's findings and decision thus became final. Taylor has timely filed his appeal of the ALJ's decision. 42 U.S.C. § 405(g). The Commissioner has filed a Motion for Summary Judgment (Document No.12). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 16). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 390 (Document No.7). There is no dispute as to the facts contained therein.

**III. Standard for Review of Agency Decision**

The court, in its review of a denial of disability benefits, is, only: "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's

decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d

1127 (5th Cir. 1973)).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

5

    4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

    5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

    In the instant action, the ALJ determined, in his December 18, 2009, decision that Taylor was not disabled at step five because he retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. In particular, the ALJ determined that Taylor was not presently working (step one); that Taylor's essential hypertension, obesity and major depressive disorder were severe impairments (step two); that Taylor did not have an impairment or combination of impairments that met or medically equaled one the listed impairments in Appendix 1 of the regulations (step three); that Taylor had the residual functional capacity to perform medium work except that in consideration of his mental impairment, he could perform work entailing simple one to two step instructions and avoiding interaction with the public; that Taylor was unable to perform his past relevant work as a mail handler (step four); and that Taylor's impairments did not

prevent him from performing jobs that exist in the national economy, taking into consideration his age, education, work experience, and residual functional capacity, and that he could perform jobs such as an office cleaner, sorting work, and warehouse worker (step five).

By way of background information, Taylor served in the United States Military and was in the first Gulf War. All of his medical care has been provided by the Veterans Administration ("VA"). Both the VA and the Merit Systems Protection Board have found Taylor disabled. (Tr. 300-307).

The records show that Taylor has complained of and been treated for hypertension, obesity, low back pain, headaches and depression. By history, Taylor reported he fractured his right hand while serving in the military.

With respect to headaches, the medical records show that Taylor underwent a neurological examination on April 4, 2007. (Tr. 195-198). Dr. Sarwar commented that Taylor had chronic moderate to severe vascular headaches [migraines]. Dr. Sarwar could not rule out that Taylor's depression could be contributing to headaches. (Tr. 197).

Taylor's hypertension was controlled through medication.[2] The records show that Taylor was obese. His average body mass index was 32.[3] He was encouraged to exercise. Taylor was

---

[2] The records from 2006 through 2009 reveal Taylor's blood pressure readings were within normal limits. For example: on August 22, 2006, 126/56 (Tr. 236); From 2007: February 22, 109/66 (Tr. 228, 385), August 24, 122/72 (Tr. 217, 374); October 9, 141/104 (Tr. 215, 371); November 13, 107/56 Tr. 212, 368); December 20, 124/74 (Tr. 209, 367); from 2008:January 28, 118/65 (Tr. 205, 361), February 20, 113/77 (Tr. 203, 359), May 21, 112/77 (Tr. 200, 355), August 22, 140/95 (Tr. 348), October 31, 123/86 (Tr. 342), December 15, 140.95 (Tr. 339), and from 2009: April 9, 130/80 & 147/83 (Tr. 333, 338).

[3] The medical records show that Taylor's lowest weight was 189.6 on August 22, 2006 (Tr. 206), and his highest recorded weight was 219 on December 15, 2008. (Tr. 340). The records suggest that Taylor gained weight after the stillborn delivery of his son. (Tr. 228).

diagnosed with high cholesterol. (Tr. 190, 192, 193, 194). The medical records also show that Taylor had problems with chronic sinusitis. (Tr. 190, 193). He was treated for low back pain. (Tr. 190, 194, 206, 211, 228, 236). Also, by history, the medical records reflect that Taylor fractured his right hand while in the service. In connection with a neuropsychological evaluation that was performed on June 18, 2007, Taylor's fine motor finger oscillation was measured using an electronic finger tapper. Taylor's performance fell in the range of significant impairment in his dominant right hand. (Tr. 254). Dr. Arceneaux opined that Taylor had "deficits in his fine motor control in his right hand." (Tr. 258). She noted that "[b]ased on Mr. Taylor's difficulties with his right hand, he may have difficulty taking notes or taking paper-and-pencil tests. Mr. Taylor may wish to consider the use of a tape recorder for his note taking, and explore other methods of test taking with the training facility that he chooses to attend." (Tr. 258).

Most of Taylor's treatment records are for mental health related issues such as PTSD and major depressive disorder that was exacerbated by the stillborn birth of his son. The oldest treatment note from December 20, 2004, diagnosed him with major depressive affective disorder. (Tr. 190). The treatment note from Taylor's August 18, 2006, appointment (Tr. 240-242) shows that Taylor complained of irritability and reported that he had gotten "into it with one of the acting supervisors." (Tr. 240). On November 17, 2006, Taylor reported that he was "mellowing out", taking his meds and was still working. (Tr. 232-236). Following the stillborn birth of his son, Taylor's depression worsened, and at his April 18, 2007, office visit, Dr. Adelson increased his dosage of anti-depressants. Taylor's treatment notes were the same at his July 6, 2007, October 9, 2007, February 20, 2008, May 21, 2008, October 31, 2008, December 15, 2008, and April 15, 2009, visits. (Tr. 198-205, 214-216, 221-223, 330-333, 339-346, 353-360, 371-373, 377-380).

On June 18, 2007, Taylor underwent a neuropsychological evaluation. (Tr. 249-258, 259-268). The evaluation consisted of a clinical interview as well as testing. Dr. Arceneaux summarized her findings as follows:

> In summary, the results of the current neuropsychological evaluation appear to indicate that Mr. Taylor is functioning in the average range of cognitive function. His nonverbal abilities appear to be better developed compared to his verbal abilities. His working memory appears to be as well developed as his general intelligence at the current time. However, it appears that his nonverbal memory functions better than his verbal memory.
>
> Academically, Mr. Taylor's performance fell within the average range. He has a relative weakness in his ability to phonetically decode words and his writing ability.
>
> Neuropsychologically, Mr. Taylor evidenced no impairment in his executive functioning, his constructional praxis (although he had more difficulty with increasingly complex figures), and his visual-spatial memory or in his ability to sustain attention. Mr. Taylor did evidence impairment in his ability to retrieve auditorily encoded information without cues and he had deficits in his fine motor control in his right hand.
>
> Psychologically, Mr. Taylor appears to be experiencing distress at the current time and is experiencing symptoms consistent with depression with the report of having thoughts of suicide on one occasion. Furthermore, he lost a newborn son during childbirth in January and is struggling with his grief over the loss as well as difficulties in his relationship with his wife resulting from the loss of their child. Mr. Taylor is experiencing symptoms of feeling as though he is being punished, feelings of guilt, feelings of sadness, being more self critical, and sleeping loss. He also reported increased agitation, and being more irritable. Furthermore, he is experiencing more difficulties making decisions, and it is likely that he may feel more confused, more easily distracted, and have difficulties in concentrating. Mr. Taylor has experienced trauma in his past, and appears more hypervigilant as a result. Also of concern, is that his evaluation suggested he may be quick to feel that he is not being treated fairly and may feel that other people are trying to undermine his interests. He may also display poor social judgment. Such feelings are likely to be affecting him at work, and lead to his fear that he may "go postal" at work, as mentioned in the reason for his referral at the current time.
>
> In summary, although Mr. Taylor's cognitive function and his academic abilities indicate that he has potential to be successful in a vocational training setting, such as Air Conditioning and Repair or school to become an Electrician, his current

emotional function suggested he would likely have a difficult time focusing and concentrating at school. Psychologically, Mr. Taylor appears to be experiencing significant depression with concentration and thinking difficulties. He also has difficulties in his ability to interpret social interactions and has experienced trauma in his past that continues to affect him. It appears that he meets diagnostic criteria for Bereavement, and for a Major Depressive Disorder, Moderate. He also appears to meet criteria for Posttraumatic Stress Disorder. Mr. Taylor should address these issues within therapy and through use of medications. Once his symptoms are alleviated, Mr. Taylor has the potential to do well. Mr. Taylor, neuropsychologically, may have difficulty retrieving information that is presented auditorily or verbally, and may have difficulty taking notes due to the impairments he has in the functions of his right hand. (Tr. 257-258).

Dr. Arceneuax also completed a Mental Status Report form. (Tr. 269-271). With respect to Taylor's prognosis, ability to relate to others and sustain work and ability to respond to changes/stress in work settings, she wrote:

> 12. Prognosis, with comments: With therapy [with] medication client should improve.
>
> 13. Ability to relate to others and sustain work: Client may have difficulty maintaining attention in stressful environment [and] may become agitated.
>
> 14. Ability to respond to change/stress in work settings: Client will have difficulty responding to changes unless on appropriate medications. (Tr. 271).

Taylor was evaluated by Glen E. McClure, Ph.D. on July 8, 2008. (Tr. 273-278). Dr. McClure opined that Taylor had a major depressive disorder, moderate.

In connection with Taylor's application for DIB, Sarah Jackson, Ph.D., completed a Mental Residual Functional Capacity Assessment Form (Tr. 293-296), and a Psychiatric Review Technique Form. (Tr. 279-292). With respect to the Psychiatric Review Technique Form, Dr. Jackson opined that Taylor had PTSD and moderate depressive disorder. She further found that Taylor had no episodes of decompensation, mild difficulties in maintaining concentration, persistence or pace and had moderate difficulties in activities of daily living and in maintaining social functioning. Turning

to Taylor's Mental Residual Functional Capacity, Dr. Jackson evaluated three areas: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Jackson found Taylor was "not significantly limited" in the following areas: the ability to remember locations and work like procedures; the ability to understand and remember very short and simple instructions; the ability to understand and remember detailed instructions; the ability to carry out very short and simple instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to make simple work-related decisions; the ability to ask simple questions or request assistance; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness or cleanliness; the ability to be aware of normal hazards and take appropriate precautions; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others. Areas identified by Dr. Jackson where Taylor was "moderately limited" include: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting.

The last evaluation, a psychiatric evaluation, was performed by Dr. Kenneth S. Arfa on

September 8, 2009. (Tr. 317-323). The report indicates that Taylor takes Zolpidem for insomnia and Effexor for depression. Dr. Arfa opined that Taylor has major depressive disorder, recurrent, moderate. Possible PTSD, chronic. Dr. Arfa described Taylor's prognosis as "[g]uarded. Chronicity, limited treatment." (Tr. 319). Dr. Arfa completed a Medical Source Statement of Ability to do Work Related Activities. Applying a scale ranging from "none" to "extreme", Dr. Arfa evaluated Taylor's ability to understand, remember, carry out instructions, his ability to interact appropriate with supervisors, co-workers, and the public, and his ability to respond to changes in a routine work setting. Dr. Arfa found a few areas where Taylor no limitations. Those areas include his ability to understand and remember simple instructions; carry out simple instructions; and to make judgments on simple work related decisions. In several areas, however, Dr. Arfa opined that Taylor had moderate limitations. The areas identified by Dr. Arfa were: the ability to understand and remember complex instructions; the ability to carry out complex instructions; the ability to make judgments on complex work related decisions; the ability to interact appropriately with the public; the ability to interact appropriately with supervisors; the ability to interact appropriately with co-workers; and the ability to respond appropriately to usual work situations and to changes in a routine work setting.

  Taylor testified at the hearing. Taylor was questioned by the ALJ about his daily activities. Taylor testified he spends the day watching television. (Tr. 67). He also does laundry and cleans the kitchen. (Tr. 67). He spends his day around his house and does not go out by himself. (Tr. 67, 68). Taylor stated he dislikes people. (Tr. 71). When asked by the ALJ if he could remember short and simple instructions, Taylor responded "I guess." (Tr. 68). The ALJ asked Taylor about his work at the post office and how he responded to supervision. (Tr. 63, 70, 72, 73). The ALJ also

questioned Taylor about his right hand impairment. (Tr. 72). Taylor testified about problems he has using his right hand. (Tr. 72). He stated he cannot grab or squeeze with his right hand and had difficulty writing because his right hand cramps up. (Tr. 72-73). He testified that while working at the post office he would grab a 70 pound mail sack from the floor with his left hand.(Tr. 73).

The ALJ found that Taylor's impairments of hypertension, obesity and major depressive disorder were severe impairments at step two, but that the impairments, individually or in combination did not meet or equal a relevant listing, and that he had the RFC to perform medium work that, in light of his mental impairment, entailed simple one to two step instructions and avoided interaction with the public.

Taylor argues that the ALJ erred in failing to consider his right hand impairment to be severe. Taylor points to his testimony about his dominant right hand that he fractured while in the military and his limited use of the hand in response to a question by the ALJ that "I understand that you have a right hand impairment, right." (Tr. 72). Taylor testified he cannot grab or squeeze and that his hand cramps up. (Tr. 72-73). He further testified about his ability to lift with his right hand. Taylor testified that while working at the post office, he would grab a seventy pound sack with his left hand. (Tr. 73). Taylor argues that the objective medical evidence supports his claim that his right hand impairment should have been evaluated by the ALJ at step two. He relies on the fine finger oscillation testing he underwent in June 2007, which showed he would have difficulty with fine and possibly gross manipulation tasks involving his right hand, and would have a problem writing using his right hand. The Commissioner responds that there was no error by the ALJ in not mentioning Taylor's right hand in his discussion of impairments because Taylor had worked many years and his ability to work shows it had no impact on his ability to do work.

At step two, the claimant bears the burden of showing that he has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.[4] The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smoven v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). Simply put, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984); 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999); 20 C.F.R. § 404.1523. Even though the burden at step two lies with the claimant, the claimant need only make a minimal showing to move to the next step in the five step sequential process. With respect to a minimal showing, the mere presence of a condition is not sufficient to make a step two showing. *See Bowen,* 482 U.S. at 153.

---

[4] The ability to do most work activities encompasses "the abilities and aptitudes necessary to do most jobs." *Williams v. Sullivan*, 960 F.2d 86, 88 (8th Cir. 1992). Examples include physical functions such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work situation. *Id.* at 88-89; 20 C.F.R. § 1521(b).

Here, Taylor has made a minimal showing that his right hand should have been considered by the ALJ as a severe impairment. Dr. Arceneaux's testing showed that Taylor had severe limitations in his right hand that impacted his ability to perform fine and possibly gross manipulation tasks and that he might have problems with note taking. In addition, Taylor's testimony about his dominant right hand gives credence to his argument that his ability to use his right hand was limited. Upon this record, Taylor has shown that the AlJ erred by not considering his right hand as an impairment and this matter must be remanded for consideration of this impairment in the five step sequential process.

Taylor next argues that substantial evidence does not support the finding by the ALJ that he retained the RFC to perform medium work restricted to the extent that it entail simple one to two step instructions and that he avoid interaction with the public. Taylor contends his ability to interact with supervisor(s) and co-workers was the same as his ability to interact with the public, namely he was "moderately limited" in all three areas yet only one of the three was included and incorporated by the ALJ in determining his RFC. Taylor contends that the other limitations were supported by the opinions of the State agency medical consultants, observations of his treating doctors at the VA, and his own subjective complaints, and that his RFC should have included that he avoid interaction with supervisor(s) and avoid interaction with co-workers.

Here, the ALJ found that Taylor had the RFC to perform medium work that entailed simple one to two step instructions and avoiding interaction with the public. In formulating Taylor's RFC, and specifically Taylor's need to avoid work that required interaction with the public, the ALJ wrote:

> The undersigned finds the opinions rendered by Dr. Arfa, who is member of the American Board of Psychiatry and Neurology, to be credible and persuasive and affords them great weight in formulating the residual functional capacity delineated

herein. (Tr. 19).

Dr. Arfa opined that Taylor had moderate limitations in three areas: his ability to interact with the public, his ability to interact appropriate with supervisor(s) and interact appropriate with co-workers. Dr. Arfa's limitations were consistent with and corroborated by the record. The records from the VA demonstrate that Taylor had difficulty with supervisors at his work place and was concerned about "going postal" and losing control of his emotions. (Tr. 240, 249, 259). Dr. Arceneaux wrote that the results of PAI testing showed: "Mr. Taylor is likely to be withdrawn and isolated and feeling estranged from the people around him." (Tr.256). She further noted that Taylor believes others are trying to undermine his interests. (Tr. 256-257). Dr. Arceneaux wrote:

> Also of concern, is that his evaluation suggested he may be quick to feel that he is not being treated fairly and may feel that other people are trying to undermine his interests. He may also display poor social judgment. Such feelings are likely to be affecting him at work, and lead to his fear that he may "go postal" at work, as mentioned in the reason for this referral at the current time." (Tr. 257).

Similarly, the Mental Residual Functional Capacity Assessment completed in July 2008 by Sarah Jackson, Ph.D., found that Taylor was moderately limited in his ability to accept instructions and respond appropriately to criticisms from supervisors. (Tr. 293-296).

Because the ALJ failed to incorporate *all* of the moderate limitations found by Dr. Arfa, that he found credible, persuasive and afforded great weight, and given that Dr.Afra's findings concerning Taylor's ability to interact appropriately with supervisor(s) and interact appropriately with co-workers, were consistent with and corroborated by the findings of Dr. Arceneaux, Dr. Jackson, his records from the VA, and his testimony, upon this record, Taylor's RFC is not supported by substantial evidence. Accordingly, the matter must be remanded for further development of the record, including a new RFC assessment, a new credibility assessment, and at step five, the ALJ

should reconsider Taylor's ability to perform any work. In addition, further development of the record is necessary to ascertain Taylor's job description in light of the confusing exchange between the VE, and Taylor' wife, Tequilla Taylor, concerning Taylor's work as performed by Taylor at the post office about the difference between a mail handler and mail sorter. (Tr. 74-79).

Lastly, Taylor argues that the ALJ failed to obtain a knowing and intelligent waiver of counsel. According to Taylor, the ALJ was on notice that he was having a difficult time understanding and comprehending the proceedings in general and in particular, the questions posed by the ALJ with respect to his impairments, limitations imposed by the impairments and his job duties. The Commissioner responds and argues that Taylor was informed in writing prior to the hearing of his right to representation and that he elected to proceed with his hearing without representation.

The law is clear that social security claimants like Taylor have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406. The Fifth Circuit in *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)) held that a claimant is entitled to receive notice of his right to counsel at an administrative hearing. This includes that a claimant be apprised of how an attorney can assist claimant in the hearing; sources of free counsel and possibility of contingency arrangements; and limitation of attorney fees to twenty-five percent of past due benefits. The record confirms the Commissioner's representations that Taylor received written notices about representation prior to the hearing. (Tr. 87-90, 95-97, 95-96, 101-104, 106,107, 116,121, 122 ). Also, before the hearing commenced, the ALJ explained to Taylor that he had a right to be represented by an attorney or by any other person who knows how to handle the matter. (Tr. 59). Taylor confirmed he received the notice and expressly stated it was

his desire to go forward with the hearing. (Tr.59).[5]  Moreover, Taylor's wife, Tequilla Taylor, declined the ALJ's offer to terminate the hearing despite her concern that Taylor would later ask her to explain what had taken place at the hearing.  This is not a situation where a claimant did not receive written notification of his right to representation or where this was not addressed at the hearing.

## V. Conclusion

Based on the foregoing, and the conclusion that substantial evidence does not support the ALJ's decision, the Magistrate Judge

ORDERS that Defendant's Motion for Summary Judgment (No.12), is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED, and that this case is remanded to the Social Security Administration pursuant to 42 U.S.C. §405(g), for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 16th day of October, 2012.

Frances H. Stacy
United States Magistrate Judge

---

[5] In particular, the ALJ advised Taylor:
ALJ:  Okay, and an attorney or representative will help you out in developing the case asking the proper questions, making sure that the whole story comes out and asking questions of the vocational expert who is present here and who also will be testifying.  I always recommend that a person be represented however, that person also has a right not to be represented.  He has a right to go ahead and have the hearing without an attorney so what would you rather do?  Would you rather have more time to get representation or would you rather have us go ahead and have the hearing today?

CLMT:  We can go ahead and have the hearing. (Tr. 59).